IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

|  |  |  |
|---|---|---|
| | § | |
| **GARY D. ROBINSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:04-CV-0214-C** |
| | § | **ECF** |
| | § | **Referred to the U.S. Magistrate Judge** |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed September 8, 2004, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on January 26, 2005, Defendant filed her brief on February 24, 2005, and Plaintiff filed his reply on March 10, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

## I.   STATEMENT OF THE CASE

Plaintiff filed an application for supplemental security income benefits on June 6, 2002, alleging disability beginning June 1, 1994.  Tr. 10, 309-23.  Plaintiff's application was denied initially.  Tr. 10.  An application for disability insurance benefits was filed on February 13, 2003, which was escalated at the reconsideration level.  Tr. 55-57.  That application was joined with the SSI application for a determination.  Both applications were denied upon reconsideration.  Tr. 10.  Plaintiff filed a Request for Hearing by Administrative Law Judge on May 24, 2003, and this matter came for hearing before the Administrative Law Judge ("ALJ") on November 6, 2003.  Tr. 27, 333-69.  Plaintiff, represented by a non-attorney, testified in his own behalf.  Tr. 336-56, 366-67.  Michael Driscoll, a vocational expert ("VE"), appeared and testified as well.  Tr. 357-66.  At the hearing, Plaintiff requested that his alleged onset date be amended to June 5, 2002.  Tr. 10.  The ALJ issued a decision unfavorable to Plaintiff on January 30, 2004.  Tr. 7-19.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  He found that Plaintiff last met the disability insured status requirements as of December 31, 1997; therefore, as Plaintiff was not disabled before December 31, 1997, the application for Title II disability insurance benefits was denied.  The remainder of his decision focused on the application for supplemental security income benefits.  Tr. 10, 17.

The ALJ found that Plaintiff had not engaged in substantial gainful activity at any time since June 5, 2002.  *Id.*  He found that Plaintiff has "severe" impairments, including post traumatic arthritis of the right hand with amputation of the 4th digit, osteoarthritis of the knees, degenerative disc disease with stenosis at the L3-4 level, major depression, and post traumatic stress disorder.  Tr. 11, 18.  He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments,

20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ noted that Plaintiff was incarcerated on May 15, 2000, and underwent diagnostic evaluation through the Texas Department of Criminal Justice. Tr. 11. He noted that Plaintiff was treated for knee pain and loss of grip in his right hand. *Id*. He also noted Plaintiff's symptoms of post-traumatic stress disorder ("PTSD") in February 2002. *Id*. The ALJ noted that Plaintiff underwent psychiatric evaluation on March 8, 2002, when he was diagnosed with depression. Tr. 12.

The ALJ noted that Plaintiff was released from prison on May 16, 2002, and thereafter sought mental health treatment through the Betty Hardwick Mental Health - Mental Retardation Center ("MHMR"), complaining of depression and flashbacks. *Id*. A psychiatric evaluation was completed under the direction of a mental health nurse practitioner, Juliann Reakes, RN MH-P ANP. *Id*. Plaintiff was noted to be depressed and anxious, with appropriate affect, was oriented times three, remote and immediate memory were noted to be impaired, and he was diagnosed with recent, recurrent major depression and PTSD. *Id*. The ALJ noted that Plaintiff was prescribed medication and, at a follow-up visit three weeks later, was prescribed another medication. *Id*.

The ALJ noted that Plaintiff underwent a psychiatric consultative examination on September 17, 2002. Tr. 12. He noted Plaintiff's chief complaints of major depression and PTSD; his report of depression since 1972; and symptoms including dysphoric mood, anhedonia, insomnia, over-sleeping, chronic fatigue, decreased energy, difficulty concentrating, loss of appetite, and occasional overeating. *Id*. He noted that the examination of the psychiatric consultative examiner ("CE"), Dr. G. Alan Trimble, revealed that Plaintiff was in no acute distress, was slightly obese, and was very somnolent, with depressed mood which was congruent to the situation. Tr. 13. The CE

-3-

noted that Plaintiff was oriented times three and that his concentration, persistence, and pace were adequate during the examination. *Id*. The ALJ noted the diagnosis of the psychiatric CE, major depressive disorder, chronic; and substance abuse, missed, in remission, by history. *Id*.

The ALJ discussed Plaintiff's mental health treatment at MHMR, including the reports and progress note of Plaintiff's treatment providers. *Id*. He noted that Plaintiff's medications were adjusted and that he reported that his symptoms improved and worsened. *Id*. The ALJ also discussed the findings of the physical consultative examination. *Id*. Plaintiff's examination and treatment at the Veteran's Affairs Medical Center was also discussed. Tr. 14.

The ALJ noted that in accordance with Social Security Ruling 96-6p, he had reviewed and considered the opinions of the state agency medical consultants ("SAMCs"). Tr. 15. He noted that the SAMCs had opined that Plaintiff was capable of a wide range of work activity at the medium exertional level and specifically noted their opinion that Plaintiff was able to perform non-complex tasks, interact with coworkers and supervisors, and adapt to the work setting environment. *Id*. The ALJ indicated that as the record contained new and material evidence, his RFC determination was not based on their opinions. *Id*.

The ALJ indicated his recognition that Plaintiff may experience some degree of pain or discomfort at times of overexertion but noted that even moderate levels of pain are not incompatible with the performance of certain levels of sustained work activity. Tr. 16. The ALJ found that Plaintiff's statements concerning his impairments and their impact on his ability to work were not substantiated by the medical evidence to the extent alleged to support a finding of disability. Tr. 18. The ALJ found that neither the objective medical evidence nor the testimony of the Plaintiff, in addition to the non-medical evidence, established that the Plaintiff's ability to function was so impaired as to preclude a limited range of work at the sedentary exertional level. *Id*.

The ALJ found that Plaintiff could not return to his past relevant work as a car salesperson. Tr. 16, 18.  He noted that Plaintiff was considered an individual "closely approaching advanced age" with a high school education  plus two years of college.  Tr. 17-18.

 The ALJ found that Plaintiff retained the RFC to perform sedentary work activity, limited to jobs that do not require more than occasional stooping, balancing, crouching, crawling, kneeling, or climbing stairs or ramps; that do not require climbing scaffolds, ladders, and ropes; that do not require sitting without the opportunity to frequently stand in addition to lunch and normal breaks during the work day; that do not require standing or walking for more than 2 hours out of an 8-hour day; that do not require handling or fingering objects with the right dominant upper extremity more than frequently; that do not require maintaining fixed concentration and attention for periods of longer than 20 minutes without the opportunity to briefly refocus for a minute or two and come back to fixed concentration; and that do not require understanding, remembering, and carrying out more than detailed noncomplex instructions.  Tr. 16, 18.  Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments.  Tr. 17.   The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of telephone solicitor, with 8,900 jobs in Texas and 219,000 nationally; telephone answering service operator, with 5,200 jobs in Texas and 166,000 jobs nationally; and lower level receptionist, with 4,500 jobs in Texas and 98,000 jobs nationally. *Id*.  The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision.  Tr. 17, 19.

Plaintiff submitted a Request for Review of Hearing Decision/Order on March 29, 2004.  Tr. 6.  The Appeals Council issued its opinion on July 12, 2004, indicating that although it had

considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request.  Tr. 3-5.  The ALJ's decision, therefore, became the final decision of the Commissioner.

On September 8, 2004, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.    STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 17-18.

## III.   DISCUSSION

Plaintiff claims that the ALJ's determination at step 5 that Plaintiff can perform work which exists in the national economy is not supported by substantial evidence because the ALJ failed to incorporate any social function limitations or any limitations on the ability to perform detailed tasks into his RFC finding and into the hypothetical question posed to the VE. Plaintiff further argues that the testimony of the VE does not constitute substantial evidence to support the ALJ's finding because the jobs identified by the VE involve reasoning and skills which Plaintiff does not have because of his limitations.

**A.   Whether the ALJ erred by failing to incorporate a social function limitation or any limitations on the ability to perform detailed tasks into his RFC finding.**

Plaintiff argues that the ALJ improperly ignored the opinions of the psychiatric CE and of the SAMCs who opined that Plaintiff was limited in social functioning and in his ability to perform detailed tasks. Plaintiff argues that, as a result, the ALJ's RFC finding is not supported by substantial evidence, and the hypothetical questions posed to the VE failed to reasonably incorporate all of Plaintiff's limitations. Plaintiff further argues, therefore, that the testimony of the VE does not constitute substantial evidence to support the ALJ's finding at step 5 that Plaintiff retained the RFC to perform work which exists in significant numbers in the national economy.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would

allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Plaintiff correctly notes that this is a step 5 case.  The ALJ found that Plaintiff retained the RFC to perform a limited range of sedentary level work.  Tr. 18.  The ALJ relied upon the testimony of the VE to find that Plaintiff had acquired work skills that were transferrable to sedentary work and that a person with Plaintiff's RFC, vocational history, and age could perform the jobs of telephone solicitor, answering service operator, and lower level receptionist.  Plaintiff argues that these jobs, as noted in the *Dictionary of Occupational Titles* ("DOT")[1], require the ability to deal with people and require a reasoning level of R3.[2]   Plaintiff alleges that there is not substantial evidence in the record to support the ALJ's finding that Plaintiff had no significant limitations in his ability to deal with people and retained the ability to perform R3 tasks.

The record indicates that Plaintiff underwent an examination by Dr. Trimble on September 17, 2002.  Tr. 126-130.  Dr. Trimble noted that Plaintiff does not have any symptoms of PTSD, although he did have post-traumatic arthritis.  Tr. 126.  He noted Plaintiff's complaints of depression since 1972. *Id*.  Dr. Trimble noted that Plaintiff was very somnolent, falling asleep twice during the exam.  Tr. 128.  He noted no abnormalities in speed, quantity, or quality of speech; depressed mood; congruent affect; and no evidence of thought disturbances, perceptual distortions, delusions, hallucinations, or suicidal ideation. *Id*.  Dr. Trimble noted that Plaintiff was oriented to person, place, and time. *Id*.  He noted Plaintiff's report of living in a house alone, handling his own finances, and doing no household chores or shopping because of lack of motivation and back pain.

---

[1]     *See*  United States Dept. of Labor, Employment & Training Admin., *Dictionary of Occupational Titles*  (4th ed. 1991)("DOT").

[2]     Plaintiff notes that a reasoning level of R3 require the worker to be able to deal with problems involving several concrete variables.  DOT App. C.

Tr. 129.  Plaintiff reported that he didn't read, watch TV, go out to eat, or engage in any other activities for fun.  *Id.*  Plaintiff also reported that he did not get along with his brothers, although he got along with his sister, and he had virtually no friends and avoided social contact, although he attended church when he could.  *Id.*  Dr. Trimble opined that Plaintiff's concentration, persistence, and pace were adequate during the examination.  *Id.*  His impression was major depressive disorder, chronic.  *Id.*  Dr. Trimble opined that Plaintiff's Global Assessment of Functioning ("GAF") score on Axis[3] V[4] was 50,[5] which denotes serious symptoms or any serious impairment in social, occupational, or school functioning.  Tr. 130.

Plaintiff also received mental health treatment from MHMR personnel, which is described in his records and was discussed by the ALJ in his decision.  Plaintiff reported that he experienced stress as a result of a family conflict.  Tr. 151.  During a mental health status exam, his  mental health care provider noted no problems with relationships or family, although problems with getting up and dressed, keeping a job, sleeping, and ability to shop were noted, as well as persistent financial problems.  Tr. 161.  Upon initial intake examination, Plaintiff's GAF was noted to be 60.[6]

---

[3]     The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client.  *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 25-30.  An Axis I diagnosis is used to report all clinical disorders except for personality disorders and mental retardation, which are reported on Axis II.  *Id.* at 27-28.

[4]     The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.  This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome."  *Id.*

[5]     A GAF score of 41-50 indicates "serious symptoms" such as suicidal ideation, or any "serious impairment in social, occupation, or school functioning," such as inability to keep a job or having no friends. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

[6]     The DSM-IV defines a GAF of 51-60 as moderate symptoms (e.g. flat effect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social, occupational,

Tr. 186.  Inexplicably, the same provider also indicated a GAF of 30[7] on that same date.  Tr. 172.

Plaintiff's GAF was noted to be 60 on June 5, 2002; June 19, 2002; July 22, 2002, October 2, 2002;

and October 31, 2002.  Tr. 153-54, 169-71.   During this period, Plaintiff described sadness when

his mother died, and he described conflicts with his family over the estate and arguments with his

brother, who was executor of his mother's will.  Tr. 150, 173.   Plaintiff also indicated stress upon

his release from prison and because of his financial problems.  Tr. 157, 179.  A July 15, 2003,

progress note indicates that Plaintiff complained of some symptoms but was "close to baseline."

Tr. 289.  Plaintiff reported that he was feeling worse and had an increase in his depression in

September 2003 and that his depression was continuing but he was sleeping better in October 2003.

Tr. 282-83, 285-86.  Plaintiff was noted to experience situational stress. Tr. 292.

　　　　Plaintiff testified that he cries a lot and is secluded, doesn't eat sometimes, and has

nightmares.  Tr. 342.   Plaintiff testified that he and his brother had a big problem when his mother

died and further testified that his brother was the only person with whom he didn't get along. Tr.

343.   When asked if he had a fear of going outside the house, Plaintiff testified that he likes to stay

outside sometimes.  Tr. 344.

　　　　Mental residual functional capacity ("MRFC") assessment and psychiatric review technique

("PRT") forms were completed by Margaret Stirling Meyer, M.D., a psychiatrist.  Tr. 197-99, 205-

34.  In her MRFC, Dr. Meyer indicated by checkmark that Plaintiff was moderately limited in the

ability to understand and remember detailed instructions, carry out detailed instructions, maintain

---

or school functioning (e.g. few friends, conflicts with peers or co-workers).  *American Psychiatric
Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

　　　[7]　　The DSM-IV defines a GAF rating within the range 21-30 as describing someone
whose "behavior is considerably influenced by delusions or hallucinations or serious  impairment
in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal
preoccupation) or inability to function in almost all areas (e.g., stays in bed all day; no job, home,
or friends).  *Id*. at 32.

attention and concentration for extended periods, and complete a normal work week without interruptions.  Tr. 197-98.  She also indicated that Plaintiff was moderately limited in his ability to interact appropriately with the general public, accept instructions and criticism from supervisors, and set realistic goals.  Tr. 198.  Dr. Meyer opined that Plaintiff retained the capacity to perform one- or two-step tasks and could sustain superficial interpersonal interaction, as well as adapt to work change and interact adequately with coworkers and supervisors.  Tr. 199.

In her PRT form, Dr. Meyer opined that Plaintiff was moderately limited in maintaining social functioning, experienced moderate difficulties in maintaining concentration, persistence, and or pace, was mildly limited in the activities of daily living, and had no episodes of decompensation of extended duration.  Tr. 216.  Dr. Meyer noted that Plaintiff's concentration and memory were fair, and his social activities were described as limited.  Tr. 218.  She opined that the limitations as alleged were not fully supported by the evidence in the file.  *Id*.

Plaintiff argues that the ALJ's RFC assessment is not supported by the opinions of the SAMC, Dr. Meyer.  He notes that Dr. Meyer opined that Plaintiff's ability to perform detailed tasks was moderately limited in his ability to interact with the general public.  In considering the "part B" criteria, the ALJ found that Plaintiff had mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistent, or pace, with no episodes of decompensation.  Tr. 15.  The ALJ ultimately found that Plaintiff retained the RFC to perform a limited range of sedentary work and limited Plaintiff to jobs which did not require him to maintain fixed concentration and attention for periods of longer than 20 minutes without the opportunity to briefly refocus.  Plaintiff argues that this mental RFC finding does not reflect the limitations noted by Dr. Meyer and Dr. Trimble.  Plaintiff argues that the ALJ disregarded the opinions of the examining and reviewing psychiatrists and relied upon his own lay opinion.  Plaintiff alleges that the ALJ ignored the opinion of Dr. Meyer, relying instead upon the

undated, unsigned forms in the record, thereby violating the directives of Soc. Sec. Ruling 96-6p (July 2, 1996)("SSR 96-6p").

Pursuant to SSR 96-6p, the findings of fact made by SAMCs regarding the nature and severity of an individual's impairment "must be treated as expert opinion evidence of nonexamining sources" by the ALJ.  The ALJ is "not bound by findings made by State agency or other program physicians and psychologists, but [he] may not ignore these opinions and must explain the weight given to the opinions in their decisions."  *Id*.  However, the opinions of SAMCs "can be given weight only insofar as they are supported by evidence in the case record."  *Id*.

In his opinion the ALJ noted that he had reviewed the opinions of the SAMCs as non-examining sources and indicated that they determined that Plaintiff was capable of a wide range of medium work activity; he could perform non-complex tasks, interact with coworkers and supervisors, and adapt to the work setting environment.  Tr. 15.  He indicated that he had not based his opinion on their determinations because of new and material evidence in the record.  Tr. 15.

Plaintiff first argues that the record contains no evidence from an acceptable medical source beyond the report of the psychiatric CE, Dr. Trimble, and the signed opinion of Dr. Meyer, the SAMC.  The record contains, and the ALJ extensively discussed, the treatment records of MHMR and the nurse practitioner and other mental health care providers.  While the nurse practitioner was, of course, not a "treating physician" under the applicable regulations, the opinion of a nurse practitioner is nevertheless entitled to consideration as evidence in the record.  *See* 20 C.F.R. § 404.1513(d)(1).

Plaintiff argues that he was prejudiced by the failure of the ALJ to incorporate all of the limitations noted by Dr. Meyer into his RFC finding and into the hypothetical questions posed to the VE.  It is, of course, the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion.  *See* 20 C.F.R. §§ 416.946, 416.927(e).  Although Plaintiff

-12-

argues that the ALJ ignored Dr. Meyer's opinion, the ALJ noted that he had, in fact, considered the opinions of the SAMCs.  He did not base his determination on such opinions because of other evidence in the record. Tr. 15. The ALJ specifically noted that the psychiatric CE noted that Plaintiff's concentration, persistence and pace were adequate.  *Id*.  His finding that Plaintiff was mildly limited in maintaining social functioning and was moderately limited in maintaining concentration, persistence, or pace is supported by Plaintiff's own testimony.  Plaintiff testified that he had a big problem with his brother after his mom died, consistent with his reports to MHMR personnel.  Tr. 150, 173, 343.  Plaintiff testified that although he is secluded, he did not have a problem with going outside.  Dr. Meyer indicated by checkmark that Plaintiff was moderately limited in the ability to interact appropriately with the general public. Tr. 198.  However, Dr. Meyer also opined that Plaintiff retained the capacity to maintain superficial interpersonal interaction and noted Plaintiff's ability to adapt to work change and interact appropriately with coworkers and supervisors.  Tr. 199.  Under SSR 96-6p, the opinions of state agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case.  The ALJ is not required to accept these opinions but must discuss them.  *Id*.  In this matter, the ALJ noted that he did not accept these opinions and indicated that it was because he had considered other evidence in the record.  The ALJ did not err in considering and evaluating the opinion of Dr. Meyer.

The ALJ considered the medical opinions of the SAMCs in making his RFC determination, pursuant to SSR 96-6p. Tr. 15.  He also considered and discussed the impressions and opinions of Dr. Trimble.  Tr. 12.  The ALJ is not required to incorporate any specific limitations into his RFC assessment simply because it appears in a medical opinion.  Rather, the ALJ has the sole responsibility for weighing the evidence, may choose whichever physician's diagnosis is most supported by the record, and may incorporate into the RFC assessment the limitations supported by

that diagnosis or diagnoses. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The ALJ also has the responsibility to resolve questions of credibility and questions arising from conflicting medical opinions. *Masterson*, 309 F.3d at 272. The record demonstrates that the ALJ's RFC determination was supported by substantial evidence in the record, including the reports of Plaintiff's mental health treatment providers and Plaintiff's own testimony.

Plaintiff argues that if the ALJ based his opinion on significant new evidence, he should have had the case reviewed by a mental health expert. However, the ALJ is entitled to consider Plaintiff's testimony and the opinions and treatment records of his other treatment providers. *See* 20 C.F.R. § 404.1513(d)(1).

**B.    Whether the ALJ failed to carry his burden at step 5 to identify work which Plaintiff could perform.**

Plaintiff argues that the ALJ erred at step 5 by failing to incorporate the limitations noted by Dr. Meyer into the hypothetical questions posed to the VE, including a limitation to work which involved only simple one- or two-step tasks and a limitation on dealing with people.

The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The hypothetical question posed to the VE included a person of Plaintiff's age and vocational history with the ability to perform sedentary level work limited to jobs which do not require stooping, crouching, crawling, kneeling or climbing stairs and ramps more than occasionally; do not require climbing scaffolds, ladders, or ropes; do not require sitting without the opportunity to frequently stand in addition to a lunch and normal breaks; do not require standing or walking more than 2 hours in an 8-hour work day; do not require handling or fingering with the right upper extremity more than frequently; do not require maintaining fixed concentration and attention for periods of longer than 20 minutes without the opportunity to briefly refocus for a minute or two and

come back to a fixed concentration; and do not require understanding, remembering, and carrying out more than detailed, non-complex instructions.  Tr. 358-59.  I previously found that the ALJ's RFC finding was supported by substantial evidence in the record.  Therefore, the ALJ was not required to incorporate limitations not included in his RFC finding into the hypothetical questions. Moreover, the  hypothetical questions presented to the VE need only reasonably incorporate the limitations accepted by the ALJ.  *See Bowling v. Shalala*, 36 F.3d 431, 435-36 (5th Cir. 1994)(no reversible error where the hypothetical presented reasonably incorporated the limitations accepted by the ALJ and claimant's representative had the opportunity to present questions incorporating additional limitations).  I find that the hypothetical question posed to the VE reasonably incorporated those limitations accepted by the ALJ and supported by substantial evidence in the record.

Plaintiff argues that the jobs identified by the VE, as described by the DOT, all require that the worker be able to deal with people and deal with R3 tasks as a significant part of the job. Plaintiff first argues that he is unable to deal with people or perform R3 tasks but rather is limited to one- to two-step tasks and limited in his ability to deal with the public, as noted by Dr. Meyer. Having already found that the ALJ's RFC finding was supported by substantial evidence and that the hypothetical question posed to the VE reasonably incorporated those limitations accepted by the VE, I find that this argument is without merit.

 Plaintiff next argues that the ALJ erred by relying upon the testimony of the VE at step 5 of the sequential evaluation process because the ALJ failed to prove that his acquired skills were transferable to the alternative jobs identified by the VE.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing  *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and

skills needed." *Id.*   In testifying, a  vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

A claimant's work experience encompasses the skills and abilities acquired through work done in the past, which shows the type of work a claimant may be expected to do. 20 C.F.R. § 404.1565.   Transferable skills are those "that can be used in other jobs, when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs ." 20 CFR § 404.1568(d).  If the claimant has acquired skills through her past work, the Commissioner will consider him to still have those skills unless the claimant cannot use them in other skilled or semi-skilled work that he can now do.  20 C.F.R. §§ 404.1565(a), 1568(d); Soc. Sec. Ruling 82-41 (February 26, 1979)("SSR 82-41"). Transferability of skills is most probable or meaningful with jobs where the same or lesser degree of skill is required because people are not expected to do more complex work than they have previously performed.  20 C.F.R. § 404.1568(d); SSR 82-41.

The VE testified that Plaintiff had acquired transferable skills including sales and basic reporting skills, the ability to handle money at a basic level, telephone skills to convey crucial information, and the ability to deal with the public.  Tr. 360-61.  The VE further testified that the sales and basic phone skills would be used for the telephone solicitation job; basic phone skills would be used for the telephone answering service operator; and the basic receptionist would use the basic phone skills and dealing with the public.  *Id*.  The VE specifically testified that the skill of dealing with the public would be associated with all of the jobs identified. Tr. 361. The ALJ did not find that Plaintiff was limited in his ability to deal with the public.  Although Plaintiff argues that each of the identified jobs are precluded by his social limitations and inability to deal with the

-16-

general public, the ALJ did not recognize or incorporate any such limitations into his RFC finding or hypothetical questions.  Plaintiff further argues that jobs identified by the VE involve R3 tasks, which involve tasks beyond the simple one- and two-step tasks noted by Dr. Meyer.  However, the relevant question is whether the jobs identified by the VE require a reasoning level beyond the limitations accepted by the ALJ and incorporated into his RFC finding.

In *Carey v. Apfel,* the Fifth Circuit addressed a case in which the claimant argued that the testimony of the VE, which the ALJ relied upon, conflicted with the DOT.  *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000).  The Fifth Circuit noted that "'[t]he value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed,'" and found that "DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Id.* at 145 (internal citations omitted). The Court indicated its agreement with the majority of the circuits that the ALJ may rely upon the vocational expert's testimony, provided that the record reflects an adequate basis for doing so.  *Id*.  While *Carey* deals with a conflict between the testimony of the VE and the DOT, the finding that an ALJ may rely upon VE testimony with adequate support in the record is instructive in this matter.

Clearly, an ALJ may not rely on evidence provided by a VE if that evidence is based on underlying assumptions or definitions that are inconsistent with the agency's regulatory policies or definitions – such as exertional level, skill level, and transferability of skills.  *See* Soc. Sec. Ruling 00-4p (December 4, 2000)("SSR 00-4p").  This Ruling notes that neither the DOT nor evidence from a VE "trumps" the other.  *Id.*  Rather, "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in

specific settings." *Id.* The ALJ incorporated a limitation to work which did not require the Plaintiff to understand, remember, and carry out more than detailed, non-complex instructions. The DOT descriptions indicating that the jobs identified involve R3 reasoning skills does not represent a direct conflict between the testimony of the VE and the DOT. SSR 00-4p provides that a VE or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT. The ALJ appropriately questioned the VE as to whether there were any conflicts between the DOT and his testimony and Plaintiff's representative further questioned the VE extensively. I find that there is no obvious, actual conflict between the testimony of the VE and the DOT, and there is an adequate basis in the record to support the testimony of the VE. *See Carey*, 230 F.3d at 145. The testimony of the VE constitutes substantial evidence in support of the ALJ's determination that Plaintiff could perform other work which exists in significant numbers in the national economy. Therefore, the ALJ did not err in finding that Plaintiff was not disabled, and his decision is supported by substantial evidence.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District

Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.   *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 22nd day of February, 2006.


**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**